## JEHIEL BROOKS *v.* SAMUEL NORRIS.

Recognitive acts do not exempt the party offering them from the necessity of producing the primordial title, unless its tenor be therein specially set forth. C. C., 2251.

Recognitive acts are either *ex certa scientia* or *in forma communi.* The former said to be *in forma speciali et dispositiva,* are those in which the primordial title is set forth; they are equivalent to the original title in the event of its loss, and prove its existence against the person making it, dispensing with its production. Recognitive acts *in forma communi,* are those in which the tenor of the primordial title is not set forth, serving only to confirm it so far as it is true, and to interrupt prescription; they do not prove its existence, nor dispense with its production.

By the common law, where the recital of a deed points to higher evidence in the power of the party, the withholding of which creates suspicion of fraud or unfairness, the party will be held to account for the non-production of the higher evidence, before the recital can avail him.

The Caddo tribe of Indians were never recognized as the proprietors of any lands, either by the Spanish or American governments.

The Spanish government never acknowledged any primitive title in the Indian tribes to lands on this continent.

In the treaty between the United States and the Caddo Indians, of the 1st of July, 1835, that tribe were not treated with as the owners, but merely as the occupants of the territory, from which it was the object of the government to induce them to remove.

The provision in the first supplementary article to the treaty of 1835, between the United States and the Caddo Indians, relative to a reservation in favor of the heirs of François Grappe, is a mere confirmation of such grant as may have been made by that tribe in 1801, and not a substantive grant of so much land from the government. The recital by the Indians that they had made such a grant, is not conclusive upon the government.

An objection to a witness on the ground that a suit was pending against him, by the same plaintiff, for other tracts of land, claimed under the same title, and that he had set up the same defence, goes to his credibility, and not to his competency, he being interested in the question, but not in the case.

An admission in a treaty between the United States and a tribe of Indians, as to the limits of the territory occupied by the latter, is only binding on the government, and those claiming under it after the date of the treaty; it is not conclusive on those

who had previously acquired rights. The latter may go behind the treaty, and show that the whole proceeding was, as to them, fraudulent and void.

The settlers on the section of country known as the Neutral Territory, between the Arroyo Hondo and the Sabine, within the limits of the present state of Louisiana, acquired no title to the lands occupied by them, under any custom or usage of the Spanish government, independent of the act of Congress by which their titles were confirmed.

APPEAL from the District Court of Caddo, *Boyce*, J. The plaintiff is appellant from a judgment against him. He claimed a tract of land, under a conveyance from the sons and heirs of one François Grappe, whose title rested on a reservation in his favor, contained in a supplementary article to a treaty, of the 1st July, 1835, between the United States and the Caddo Indians. This article, after reciting that the Caddo Indians had, in the year 1801, made a donation to the said Grappe, and his three sons, in the presence of the Spanish authorities at Natchitoches, of four leagues of land, declares that, " It is agreed that the legal representatives of the said François Grappe, deceased, and his three sons, Jacques, Dominique, and Balthazar Grappe, shall have their right to the said four leagues of land reserved to them, and their heirs and assigns forever ; the said land to be taken out of the land ceded to the United States by the said Caddo nation of Indians, as expressed in the treaty to which this article is supplementary. And the said four leagues of land shall be laid off in one body in the south east corner of their lands ceded as aforesaid, and bounded by the Red River four leagues, and by the Pascagoula bayou one league, running back for quantity from each, so as to contain four square leagues of land in conformity with the boundaries established and expressed in the original deed of gift, made by the said Caddo nation of Indians to the said François Grappe, and his three sons, Jacques, Dominique, and Balthazar Grappe." The third supplementary article provides that, " These supplementary articles, or either of them, after the same shall have been ratified and confirmed by the President and Senate of the United States, shall be binding on the contracting parties ; otherwise to be void, and of no effect upon the validity of the original treaty to which they are supplementary." The deed said to have

been executed by the Caddos in 1801, was not produced, nor satisfactorily accounted for.

The defendant claimed title to the premises in virtue of actual residence and cultivation, from a period anterior to the treaty of the 22d of February, 1819, between Spain and the United States, his claim having been since confirmed by Congress. He denied that the land claimed from him was embraced in that ceded to the United States by the Caddo Indians ; and averred, that through frauds practised by the plaintiff on the government, the Caddos, and the Grappes, the plaintiff, who was the Commissioner on the part of the United States to treat with the Indians, procured the treaty and reservation to the Grappes, and the assignment of their rights to him; all of which he alleged to be, as to him, null and void. He also pleaded prescription, having been in peaceable possession, in good faith and under a just title, since 1817. The final confirmation of the defendant's claim by Congress, during the pendency of this suit, was admitted.

*P. A. Morse*, and *Roysdon*, for the appellant. A donation, or confirmation of a title by a treaty, is equal to a patent. 9 Peters, 711. The recital in a deed is evidence against the parties, and those claiming under them. 1 Phil. on Evidence, 411. 4 Peters, 83. The recital in the treaty is, therefore, conclusive on the United States, and against the defendant, if he claim under the government. Comyn's Digest, *verbo* Estoppel, B. The recital need not be a copy of the recited act. 3 Johnson's Cases, quoted in 4 Peters, 86.

Fraud in the execution of the treaty can only be complained of by the United States, or the Indians.

*Frost* and *Olcott*, for the defendant. This is a petitory action, in which the defendant must recover on the strength of his own title. 10 Mart. 293. 8 Ib. N. S. 105. 5 La. 178. Admitting the Caddos to have been the owners of the land claimed by the plaintiff, the original deed of gift should have been produced, or satisfactorily accounted for. 3 Phil. on Evidence, (Cowen & Hill's ed.,) 1236. Greenleaf on Evidence, 93. 6 La. 242. 17 La. 230. 2 Mason, 464. 1 Starkie on Evidence, 369. 11 La. 590. The reservation in the treaty of whatever rights the Grappes may have, is not a substantive grant from the United States to

them.    The Caddos never occupied the lands in controversy. They never executed any such deed as the plaintiff alleges.    The defendant's title, inchoate at the date of the treaty of 1835, has been since fully confirmed.   The fraud practised by the plaintiff has been shown by the evidence.   But it has been contended that this was not a question open to examination.   As to this, see 2 Mart. 118.   7 Ib. 654.   5 La. 152.    6 Ib. 258.   9 Peters, 734. 15 Peters, 518.    The defendant having been in the open, undis- turbed possession of the premises since 1817, is protected by pre- scription.    5 Mart. 197.    Civil Code, arts. 3442, 3444, 3450, 3451.   1 Troplong, 634.

BULLARD, J.   The plaintiff alleges, that by a treaty made and entered into between the United States and the Caddo tribe of Indians, on the 1st of July, 1835, the boundaries between them were recognized and established, and the lands lying within the said recognized limits of the Caddo tribe, were ceded by them to the United States.   That by supplementary articles to said treaty, entered into, and signed on the same day, there were given, granted, and reserved unto the heirs and legal representatives of François Grappe, and to Jacques Grappe, Dominique Grappe, and Balthazar Grappe, four leagues of land, to them and their heirs forever, the said land to be taken out of the land thus ceded, to be laid off in one body in the south east corner of the ceded land, bounded by Red River four leagues, and by the Pasca- goula bayou one league, running back for quantity from each, so as to contain four square leagues of land.   That the said treaty and supplementary articles were duly accepted and ratified by the President of the United States, by and with the advice and con- sent of the Senate.   That the heirs and representatives of François Grappe, and the other Grappes, in whose favor the reservations had been made, sold and conveyed to the petitioner, all the said four square leagues of land ; and that said leagues of land have been located according to the treaty, and are situated on the right bank of Red River, in the parish of Caddo.   He further repre- sents, that Samuel Norris, notwithstanding his knowledge of the petitioner's rights, has illegally entered upon 640 acres of the said land, and refuses to give it up, to the petitioner's damage, ten thousand dollars.   He, therefore, prays that Norris may be cited,

and that the plaintiff's title may be recognized and established by a judgment of the court, and the said Norris evicted from the land, and compelled to restore possession; and that he may pay the damages aforesaid.

The defendant, by his answer, denies that the land claimed from him is comprehended in that, said to be ceded to the United States by the Caddo Indians, or in that, said to have been reserved for the Grappes.

He further answers, that he is the rightful owner of the land claimed from him, having, at and before the date of the treaty between Spain and the United States, of the 22d February, 1819, been in possession, occupancy, and cultivation, and that he has duly proved his title or claim before the proper officers, in pursuance of the laws of Congress; and that he has been in good faith and under a just title, in peaceable possession ever since the year 1817.

He further says, that the Caddo Indians never ceded to the United States, or reserved to the Grappes, or ever had any title or interest to, or in the land described in the petition; nor had the Grappes, nor did they claim to have any title, or interest, until after the treaty; and that the Indians never were the owners of the lands ceded by the treaty. The defendant expressly charges, that through gross frauds and impositions, practised upon the government, the Indians, and the Grappes, the plaintiff, who was himself the Commissioner on the part of the United States, to treat with the Indians, procured first, the treaty and reservation to the Grappes, and then the assignment to himself; and that the whole is, therefore, null and void.

Thus the case presents a question of title in Brooks to lands said to have been reserved for the Grappes, in the treaty negotiated by Brooks himself, with the Caddo Indians; the defendant alleging that the land never belonged to the Indians, that they never made any grant of it to the Grappes, and that the whole was a fraudulent contrivance by Brooks himself, with a view to private speculation.

The reservations in favor of the Grappes are contained in certain supplementary articles, which appear to have been agreed to on the same day, but were not known even to the witnesses to the

treaty, and appear to have been kept secret, under various pre-texts, such as that there were other persons who expected reserva-tions, and who would be disappointed, and that it was unparlia-mentary to let them be read, even by the witnesses to the treaty.

The first supplementary article recites, that " whereas the said nation of Indians did, in the year 1801, give to one François Grappe, and to his three sons then born, and still living, named Jacques, Dominique, and Balthazar, for reasons stated at the time, and repeated in a memorial, which the said nation addressed to the President of the United States in the month of January last, one league of land to each, in accordance with the Spanish custom of granting lands to individuals. That the chiefs and head men, with the knowledge and approbation of ·the whole Caddo people, did go with the said François Grappe, accompa-nied by a number of white men, who were invited by the said chiefs and head men to be present, as witnesses, before the Span-ish authority at Natchitoches, and then and there did declare their wishes touching the said donation of land to the said Grappe, and his three sons, and did request the same to be written out in form, and ratified and confirmed by the proper authorities according to law, &c. It is agreed, that the legal representatives of the said François Grappe. deceased, and his three sons, Jacques, Domi-nique, and Balthazar Grappe, shall have their right to the said four leagues of land reserved to them, and their heirs, and assigns forever. The said land to be taken out of the lands ceded to the United States by the said Caddo nation, as expressed in the treaty to which this article is supplementary. And the four leagues shall be laid off in one body, in the south east corner of their lands ceded as aforesaid, and bounded by the Red River four leagues, and by the Pascagoula bayou one league, running back for quan-tity for each, so as to contain four square leagues of land, in con-formity with the boundaries established, *and expressed in the original deed* of gift, made by the said Caddo nation of Indians to the said François Grappe, and his three sons, Jacques, Domi-nique, and Balthazar Grappe."

The next article provides for a small reservation in favor of Edwards ; and it is then agreed, that if the supplementary articles

should not be ratified, that circumstance should not invalidate the treaty itself.

The first question of law, which presents itself, at this stage of our inquiry, is, whether the plaintiff, in making out his title as the assignee of the Grappes, and which, in common with all plaintiffs in actions of this kind, he is bound to show, may rely upon the treaty alone, and the recitals therein contained, or whether he is compelled to go further back, and produce, or satisfactorily account for the written donation from the Indians to his vendors. Leaving out of view for the moment, and reserving for future consideration, the question whether the treaty may be construed as a substantive grant from the government, independently of the original donation which is recognized as having taken place in 1801, and looking upon the question as one between the plaintiff, the Indians, and the defendant, it appears to us to resolve itself into the question, whether such a recital in a recognitive act, dispenses the party claiming title under it, from producing the primordial title, that is, the original donation in writing, which is said to have been made in 1801. The treaty is, as it relates to the Indians, a mere recognitive act, expressing their intention not to cede to the United States, but to reserve to the Grappes, the four leagues as described in the written act of donation to them.

According to Dumoulin and Pothier, as well as a formal article of the Civil Code of this State, recognitive acts do not dispense with the exhibition of the primordial title, unless its tenor be therein specially set forth. Those authors distinguish between recognitive acts, or acknowledgments, which are in the form which they call *ex certa scientia*, and those *in forma communi*. The former, said to be *in forma speciali et dispositiva*, are those in which the primordial title is set forth. They have this peculiarity, that they are equivalent to the original title in the event of its loss, and prove its existence against the person making it, and they dispense with the production of the primordial title. On the other hand, recognitive acts, *in forma communi*, are those in which the tenor of the primordial title is not set forth. " These acknowledgments," says Pothier, " serve only to confirm the primordial title, and to interrupt prescription, but they confirm the original title only, so far as it is true; they do not prove its

existence, and they do not dispense with its production." 2 Pothier on Obligations, 742, 743. Civil *Code*, art. 2251.

Such is believed to be also the rule of evidence at common law. Where the recital in a deed points to higher evidence in the power of the party, the withholding of which creates suspicion of an intended fraud or unfairness, the party will be held to account for the non-production of the higher evidence, before the recital can avail him. 3 Phillips on Evidence, 1236. Greenleaf on Evidence, 93.

But not only is the pretended deed of gift of 1801 not produced, nor accounted for ; but it is not to be believed that any such gift ever took place. In the first place we know, as a part of the history of the country, that the place where the Caddos lived at that time, was within the jurisdiction of Nacogdoches, in the then Spanish province of Texas, which was under the government of the Captain General of the internal provinces ; and that any matter of that kind would have been transacted either at Nacogdoches, or at San Antonio de Bexar, the capital of the province, where the public archives were kept. In the second place, it is equally well known, and satisfactorily proved in the record, that the Caddo tribe of Indians were never recognized as the proprietors of any lands, either by the Spanish or American governments. It is known to us judicially, as a part of the jurisprudence of Louisiana, as well as other dependencies of Spain on this continent, that that power never acknowledged any primitive title in the Indian tribes, but that they were only entitled to hold such small allotments of about a league round their villages, as the government thought fit to grant them. 5 Mart. 655, 490. 6 Ib. N. S. 357. Nor did the American government, the successor of Spain, ever recognize the Caddo tribe, as the owners of any lands within the limits of Louisiana. The Secretary of War who was in office at the date of the treaty, (Cass,) in answer to a communication from the member of Congress then representing this district, says : "I cannot find that the government of the United States has ever recognized any claim of the Caddo Indians to a definite portion of the State of Louisiana, and my impression is, that no country was actually assigned to them by the Spanish government ; and this impression is confirmed by the fact, as I understand it, that settlements

have been made, and claims acquired by white persons, without any regard to definite boundaries. When the appropriation was last year made for holding a treaty with these Indians, the question respecting their rights came before me for consideration. It was found, on examination, that there were no documents showing any portion of the country to which they were actually entitled. The Commissioner was, therefore, instructed to procure from them a cession of their right *of occupation*, of the district in which they resided." House Doc. No. 1035, 2 Session, 27th Congress ; (in the record in this case by consent.)

But let the claim of the Caddos be what it may to the land occupied by them, it is abundantly shown, by evidence in the record, that they never occupied, and never claimed that part of the territory pretended to be ceded, in which the settlement and confirmed claim of Norris is situated, to wit, Rush Island, or *L'Isle des Prèles*, which is formed by Red River, Bayou Pierre, and Pascagoula Bayou ; and that they never pretended to have any possessions to the east of the Bayou Pierre branch of Red River. The lands embraced in these reservations are among the most fertile in the valley of Red River. There is no evidence that the Indians ever hunted over them, although they appear sometimes to have turned their horses on them, during the winter, to feed upon the rushes. Brooks himself, the Commissioner, and the plaintiff in this action, while acting as Indian agent, knew of the settlements of Norris, and many others on the Island, and so far from ever objecting to their residing there as within the Caddo lands, he assisted one of them in building his house.

But if the Indians do not appear to have known of their having any claim to Rush Island, the Grappes were equally ignorant of any grant to them as far back as 1801, and even of the reservation in the treaty in their favor, until propositions were made to them by the negociator of the treaty to purchase their pretensions. The conduct of the plaintiff, while negotiating the treaty, was singularly mysterious. The supplementary articles were kept secret even from one, at least, of the witnesses to the treaty, and there is no evidence that those articles were ever read to the Indians, in the hearing of the witnesses.

If, therefore, we regard the Caddo Indians as the grantors of

the Grappes, under whom the plaintiff holds, we think it very clear, that they have shown no title. They have failed to show any donation in 1801, and the Caddos are not shown to have been owners of the land. They were not treated with as *owners*, but merely as *occupants*. The object of the treaty was merely to induce them to remove. Such appear to have been the instructions given to the Commissioner, according to the statement of the Secretary of War; nor is it contradicted by the terms of the treaty, the second article of which stipulates, that the Chiefs, &c., of the said nation, do voluntarily relinquish their possession of the territory of land aforesaid, and promise to remove out of the boundaries of the United States, &c.

But it is contended, that the Grappes acquired the title of the United States by virtue of the reservation in the treaty, and that the treaty is their title, and equivalent to a patent. We do not so understand the treaty. The treaty after reciting a donation made in 1801, with the approbation of the Spanish government, and which had been reduced to writing, of four leagues of land to the Grappes, goes on to stipulate, that the said Grappes " *shall have their right to the said four leagues of land reserved for them, and their heirs for ever.*" This amounts certainly to nothing more than a confirmation of such grant as the Indians may have made, in 1801, to the Grappes, and not to a substantive grant from the government. We are of opinion, that the government is not concluded by the recital by the Indians in the treaty, that they had made a grant in writing in 1801 ; and that recognition of a previous grant cannot be more conclusive upon the government, than it is upon the Indians. If no such primitive grant exists, then nothing was reserved, and it is clear the United States acquired no new title by the treaty.

This view of the character of the reservation is supported by considering the different expressions used in reserving, in the same treaty, a section of land to Larkin Edwards. No previous grant to him by the Indians is recited ; but in consideration of his long services to them, his age, and incapacity to labor, it is declared, that there shall be reserved for him, his heirs, and assigns for ever, one section of land, to be selected out of the ceded lands.

Here we find terms of present grant, and not the mere recognition of a previous deed of gift in writing.

That the Grappes should have been for more than thirty years the owners of more than thirty thousand acres of land by the bounty of the Caddos, without ever knowing it, or apparently dreaming of it, appeared to the jury, who tried this cause, to surpass all belief.

Before we proceed to notice the bills of exceptions to which our attention has been called, it is proper to examine the title of the defendant to the 640 acres claimed by him.

It appears, that Samuel Norris settled in 1817, on Rush Island, within the limits of the State of Louisiana, although at that time commonly known as the Neutral Territory, between the Arroyo Hondo and the Sabine, to which the land laws of the United States had not been extended. · This was two years before the treaty of limits between Spain and the United States. It is true, that that treaty created no change in that part of Louisiana, which was clearly embraced within the treaty of cession of 1803, and had been recognized by Congress as early as 1811, as forming a part of the territory of Orleans, and which was then created into a State. But no provision had been made by law for such residents within the neutral ground, as might have obtained from the authorities of Texas inchoate titles to lands, or made improvements with the expectation of receiving ultimately a grant for lands. In 1823, Congress established a Board of Commissioners to inquire into such cases within that region. Norris then came forward, and proved his claim as a settler, and his claim was included in the list of those which were recommended for confirmation. When other similar claims were afterwards confirmed by Congress, that of Norris, and a few others, were suspended, until it could be ascertained whether it was or was not within the Indian boundaries. But it is now admitted, that during the pendency of this suit, his claim has been finally confirmed and ratified by Congress. Norris never was considered, or treated, as an intruder upon the Indian land, and there is nothing to induce the belief, that the government, in treating with the Indians, in 1835, with instructions to their Commissioners, to procure from the Indians a cession of their "*right of occupation*

*of the district in which they resided,*" intended to destroy the right of Norris, and give the land to the Grappes.

We now proceed to examine the bills of exceptions taken during the progress of the trial. The first, was to the admission of certain depositions of witnesses, notwithstanding the objection, that the defendant could not go behind the treaty to prove fraud in any person; and upon the ground, that if there was fraud in the treaty, the government alone can allege and attack it; and upon the further ground, that the government having, in the treaty, recognized the boundary of the Caddo lands, the defendant has no right to prove, that the land was located by the treaty and the Surveyor General, out of the Indian territory. But the depositions were admitted to go to the jury, on the ground, that the parties had consented to read the depositions, instead of examining the witnesses, *viva voce*, and that they might prove the same facts as the witnesses in person might prove, if present. The court did not err. According to our view of the parties, and the peculiar circumstances of the case, Norris, with a title emanating from the government, had a right to go into the questions of fraud, of Indian title, and of boundaries, and to show the nullity of the plaintiff's title by competent evidence.

The second bill, is to the admission of the two Poriers as witnesses, who had been objected to on the ground, that suits were pending against them, brought by the same plaintiff for other tracts of land, claimed under the same title, and that they had set up the same defence.

The court did not err in ruling that the objection went not to their competency, but to their credibility. They were interested in the *question* involved, but not in the *case*.

The last bill, is to that part of the charge to the jury, in which the Judge told them, in substance, that the right of the United States to the Neutral Territory, was recognized by Spain, by the treaty of 1819; that Congress, proceeding to legislate concerning land claims within that territory, by act, in 1824, directed the Commissioners appointed to examine claims, to report those of settlers who had occupied, and cultivated land before the date of the treaty, and continued to do so, in the third class if in their opinion said claims ought to be confirmed; that the title set up

Brooks v. Norris.

by Norris, being reported in the third class, and recommended for confirmation, and it appearing, by the act of 1828, that those claims were only suspended on one point, to wit, until it should be ascertained whether those lands were within the Caddo boundary, whether the government has ascertained that fact or not, the jury might examine the evidence and ascertain it to their own satisfaction, so far as to enable them to decide this case ; and that if they were satisfied that Norris was there before the 22d February, 1819, and had complied with other requisites of the act of 1824, and that the Indians, in their opinion, had not been in any kind of possession of Rush Island, down to the time the act of Congress passed, then he was of opinion, that Norris must be considered as having a right to his land, superior to that of the plaintiff derived from the Grappes ; that his right rested on the custom of the former government ; that the admission in the treaty of 1835, that Rush Island was within the Indian limits, is only binding on the government, and those who would claim rights under it after the date of the treaty, but is not conclusive upon those who had previously acquired rights ; in other words, that the admission is not to have a retro-active effect. This charge does not differ materially from the views which we have just expressed, as to the character of the treaty, and the title of Norris, and his right to go behind the treaty and show, that the whole proceeding was, as to him, fraudulent and void. There was nothing in it calculated to mislead the jury, although we are not prepared to assent to the Judge's proposition, that the title of the settlers within the Neutral Territory, rested on any custom, or usage of the government of Spain, or that they had acquired any title to, or in the soil, independently of the act of Congress by which their titles were confirmed. Under these instructions, and with such evidence before them, the jury found a verdict for the defendant, which the court below refused to set aside, on a motion for a new trial. We are not satisfied that it is our duty to disturb it.

*Judgment affirmed.*