On Rehearing.
PROVOSTY, J.
In effect the object of this suit is to locate the back line of a tract of land bounded in front by Red river, and of known side lines. Otherwise stated, to determine whether the southeast corner shall be at a point marked by a certain ironwood tree, or further back at a point marked .by certain three sweet gum trees. The uncertainty has been brought about by the shifting of the bed of Red river, for there is no dispute that the tract originally contained 640 acres. The area in dispute is 49.97 acres.
In 1853, in the suit of Brooks v. Norris, No. 263. of the docket of the district court of the parish of Caddo, a surveyor named Haley Watts was commissioned by the court to lay off the 640-acre tract in question, of which Norris was adjudged to be the owner. Brooks v. Norris, 6 Rob. 175. The problem in the present case is to locate the back, line of the tract according to the field notes and plat of that survey. The difficulty, of course, lies in ascertaining the proper starting point.
The learned trial judge found, and we 'agree with him, that the line contended for by defendant must certainly' be wrong, for if the field notes of Haley Watts are followed and plaintiff is allowed the 640 acres of land which the Haley Watts survey calls for, the northwest front of plaintiff’s land will close up the Red river and extend considerably beyond.
In 18S3, a surveyor named De Voe retraced the lines at the request of the plaintiffs’; and there is no dispute as to his having done so correctly, nor as to the correctness of his field notes, and of the plat he made; but his survey solves in' no wise the real difficulty in the case, which lies in securing a proper starting point.
One of the plaintiffs, Aaron Levy, testifies that he carried the front chain for this survey; that in going back along the Haley Watts line they found marks on the trees as they went along, and came to the ironwood tree, and went on further back until they came to “an old tree which tallied with Haley Watts’ survey”; that De Voe. said this tree was too old, and so he marked the three sweet gum trees; that in running the back line, from that corner, they crossed Bayou Pierre “right at the fork that crosses south of it,” where Bayou Pierre and Sand Beach bayous meet, about 3Ó0 or 400 feet from where they cross; that they went on to the southwest comer and found there “a crossing which Major He Voe said was a Haley Watts corner”; that they then ran the northwest side line and found ,the Háley Watts- marks on the trees along it; that he *567 (the witness) then went and got his neighbor, Mr. Cawthon, and showed him- the line, and that Cawthon said: “That is the dividing line. That is the line between us.” That up to 1S83 there had been no caving on the front at all.
According to this testimony the line would be as contended for by plaintiff.
W. McD. Cawthorne, who at the time of the said resurvey lived on the adjoining tract, testified that he then operated a ferry across bayous Pierre and Sand Beach, and that he on the occasion of this survey ferried the surveying party, one of whom was Aaron Levy, across Sand Beach bayou, and then went down Sand Beach bayou and ferried them across Bayou Pierre; and that he saw the southwest corner fixed. This corroborates in full the testimony of Aaron Levy.
Mr. Cawthorne further testified that sitting on the porch of the Boynton house in 1883 one could see up the channel of the river; and the witnesses Denbreun and Jones testify to the same thing. For this to be true the channel of the river would have had to be in 1883 where plaintiffs claim it was, and not where defendants claim it was. Up to 18S3 there had been no caving.
These witnesses are entirely reliable. The correctness of their testimony there can be no reason for doubting.
Tf now we turn from this testimony to that of the engineers, we find that plaintiffs’ two engineers do not agree with defendants’ engineer as to distances, etc.; and if we try to solve the case from the maps and the testimony of these engineers, we find ourselves confronted with a rather difficult problem. The learned trial judge, after an elaborate analysis of this expert evidence, concluded with plaintiffs, and we ourselves have found that plaintiffs’ engineers have made a better showing than defendants’; but since the testimony of said witnesses hereinabove detailed is so conclusive; there can be no necessity of loading down this opinion with an exposition of more than a dozen maps, and of the hundreds of pages- of expert testimony in connection with them — which exposition would have-to be very full and consequently very, very long, to be of any value. We may mention, however, that the Haley Watts map of the Daniels land is shown not to have been the platting of the field notes of an actual survey, or, in other words, to have been drawn according to scale, but to be a mere “picture” map; of no utility therefore for the purposes of the present case. Indeed, the testimony of Mr. Wilson, defendants’ own engineer, may be said to show that much.
The judgment appealed from, which was in favor of plaintiffs is affirmed, with costs. Defendants’ right to apply for a rehearing is reserved.
MONROE, O. J., dissents, for the reasons stated in the original opinion.